IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| D-J ENGINEERING INC., and )<br>REZAUL CHOWDHURY, )<br>)<br>   Plaintiffs, )<br>)<br>v.                                                        ) | Case No. 11-CV-1316-CM-DJW |
| )<br>UBS FINANCIAL SERVICES, INC., )<br>)<br>   Defendant. )<br>_____) | |

**MEMORANDUM AND ORDER**

UBS Financial Services Inc. moves this court for an order compelling arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA") (Doc. 10). The FAA allows a district court to compel arbitration when the court determines that: (1) a valid arbitration agreement exists between the parties, and (2) the dispute before it falls within the scope of the agreement. The agreements between plaintiffs and UBS include an unambiguous and valid arbitration requirement. And plaintiffs' claims against UBS are within the scope of the arbitration requirement. Accordingly, the court grants UBS's motion, stays this action pending arbitration, and orders the parties to proceed with arbitration in accordance with the provisions of the arbitration clause.[1,2]

**I.     Background**

   **A.  Plaintiff Chowdhury**

---

[1]   Plaintiffs filed a motion for leave to file a surreply (Doc. 15). The court granted the motion but noted that the court "will disregard any arguments in the surreply that are not properly before this court." (Doc. 16.) The court considered the entirety of plaintiffs' surreply before issuing this order.

[2]   UBS makes a passing request for attorneys' fees. UBS did not properly support this argument, and the court does not consider it. To the extent necessary, UBS's request for attorneys' fees is denied. *See* D. Kan. R. 7.6; *MacArthur v. San Juan Cnty.*, 495 F.3d 1157, 1160–61 (10th Cir. 2007) ("Mere conclusory allegations with no citations to the record or any legal authority for support does not constitute adequate briefing.") (internal quotation omitted).

Plaintiff Rezaul Chowdhury opened a personal brokerage account with UBS in January 2007. As part of the account-opening process, Mr. Chowdhury signed a personal client agreement ("Personal Agreement").  The Personal Agreement includes the following provision on the signature page:

> **In accordance with the last paragraph of the Master Account Agreement titled "Arbitration" I am agreeing in advance to arbitrate any controversies which may arise with UBS Financial Services and others.**

(Doc. 10-3 at 6 (emphasis in original)).  The Personal Agreement also states:

> I have received a copy of read and understand the Important Account Information and Disclosures booklet containing among other things the Master Account Agreement (which contains a copy of these Paragraphs A through I) . . . .  I agree to be bound by the terms and conditions in the Important Account Information and Disclosures booklet to the same extent as if those terms and conditions were contained in this document as of this date.

(*Id.*)

The Master Account Agreement provides that the agreement will be governed by the laws of the State of New York.  It also includes the following arbitration provision:

> **You agree . . . that any and all controversies which may arise between you and UBS Financial Services Inc. concerning any account(s), transaction, dispute or the construction, performance, or breach of this or any other Agreement . . . shall be determined by arbitration.**

(*Id.* at 21 (emphasis in original).)

### B. Plaintiff D-J Engineering Inc.

Plaintiff D-J Engineering Inc. opened a corporate brokerage account in October 2008.  As part of the account-opening process, D-J Engineering signed a corporate account agreement ("Corporate Agreement").  The Corporate Agreement includes the following provision on the signature page:

> **. . . The Client Relationship Agreement contains a predispute arbitration in paragraph U on page 25.**

-2-

(Doc. 10-2 at 7 (emphasis in original)).  The Corporate Agreement also states:

> You have received a copy of read and understand . . . the Client Relationship Agreement.
>
> . . . You agree to be bound by the Client Relationship Agreement and the documents incorporated there by reference . . . to the same extent as if these terms and conditions were contained in this document.

(*Id.*)

The Client Relationship Agreement provides that the agreement will be governed by the laws of the State of New York.  (*Id.* at 25.)  It also includes the following provision:

> **You agree . . . that any controversy, claim or issue in any controversy which may arise between you and UBS Financial Services Inc. . . . that occurred prior, on or subsequent to the execution of this Agreement, including but not limited to, any controversy, claim or issue in any controversy concerning any account(s), transaction, dispute or the construction, performance or breach of this or any other Agreement . . . shall be determined by arbitration.**

(*Id.* at 26 (emphasis in original).)

## II. Legal Standards

The parties agree that the FAA applies to this case.  The FAA embodies the national policy favoring arbitration.  *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008).  Under the FAA, a district court should compel arbitration when (1) a valid arbitration agreement exists between the parties, and (2) the dispute before the court falls within the scope of the arbitration agreement. 9 U.S.C. § 2 ("A written provision . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); *Id.* at § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . .

."); *see also Olathe Senior Apts., L.P. v. Ace Fire Underwriters Ins., Co.*, No. 04-2346-CM, 2005 U.S. Dist. LEXIS 43449, at *11 (D. Kan. Sept. 30, 2005) (outlining two-step approach).

The court applies ordinary state-law principles that govern the formation and interpretation of contracts when evaluating whether the parties have agreed to arbitrate a particular dispute. *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006); *Summit Constrs., Inc. v. Legacy Corner L.L.C.*, 147 F. App'x 798, 801 (10th Cir. 2005). This is a diversity action, so the court applies the choice of law rules of the forum state. *See New York Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 409 (10th Cir. 1996) ("In a diversity action . . . we apply the substantive laws of the forum state, including its choice of law rules."). Kansas is the forum state, and Kansas choice of law rules honor an effective choice of law by contracting parties. *Brenner v. Oppenheimer & Co.*, 44 P.3d 364, 374 (Kan. 2002). The contracts at issue in this case include New York choice of law provisions. Accordingly, New York law governs the formation and interpretation of the arbitration agreements.

**III.   Analysis**

    **A. There Is A Valid Arbitration Agreement And The Scope Of The Arbitration Agreement Includes The Claims Before The Court**

After reviewing the relevant contracts, the court determines that there is a valid arbitration agreement between UBS and each plaintiff that encompasses the claims before the court. Specifically, the Personal Agreement/Master Account Agreement is a contract between UBS and Mr. Chowdhury that includes an arbitration clause. Likewise, the Corporate Agreement/Client Relationship Agreement is a contract between UBS and D-J Engineering that includes an arbitration clause. The plain and unambiguous language of each arbitration clause includes "any controversy" (or "any and all controversies") between plaintiff and UBS concerning "any account(s), transaction, dispute or the construction, performance or breach of this or any other Agreement . . . ." This is a broad and comprehensive arbitration clause. *See, e.g.*, *Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir.

2000) (explaining that arbitration clause including "all disputes or controversies arising under or in connection with this Agreement" is "the very definition of a broad arbitration clause"); *Acquaire v. Canada Dry Bottling*, 906 F. Supp. 819, 835 (E.D.N.Y. 1995) (discussing several examples of broad arbitration clauses). And, after a review of the factual allegations in plaintiffs' complaint, the court determines that the arbitration clause clearly encompasses each plaintiff's claims in this lawsuit.

### B. The Court Rejects Plaintiffs' Three Arguments Against Arbitration

In reaching the above conclusions, the court rejects the three arguments raised by plaintiffs: (1) plaintiffs never received the Master Account Agreement and/or the Client Relationship Agreement that outlines the actual text of the arbitration clause, (2) the reference to arbitration in the Corporate Agreement is ambiguous, and (3) the relevant contracts are illusory.

#### 1. The Personal Agreement and the Corporate Agreement Expressly State That Plaintiffs Received The Master Account Agreement and/or The Client Relationship Agreement

Plaintiffs first argue that they "never had the opportunity to read and fairly understand the actual terms of the arbitration clauses within the Master Account Agreement or the Client Relationship Agreement because UBS never provided these documents to [them]." (Doc. 13 at 5.) In support of this argument, plaintiffs attach the affidavit of Mr. Chowdhury. But the express language of the Personal Agreement and the Corporate Agreement contradict plaintiffs' argument. Specifically, the signature page of the Personal Agreement clearly states (1) that Mr. Chowdhury received, read, and understood the Master Account Agreement and (2) that he agrees to be bound by the terms in the Master Account Agreement. The signature page of the Corporate Agreement includes nearly identical statements with respect to the Client Relationship Agreement. Plaintiffs are bound by these statements despite their current arguments and affidavit to the contrary. *See Filho v. Safra Nat. Bank of New York*, 797 F. Supp. 2d 289, 297–98 (S.D.N.Y. 2011) (rejecting plaintiff's argument that he did not receive or read the terms and conditions because "[d]irectly above Plaintiff's signature on the

account application is an acknowledgement that he received, understood, and agreed to the [terms and conditions]"); *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 252 (N.Y. App. Div. 1998) ("That a consumer does not read the agreement or thereafter claims he or she failed to understand or appreciate some term therein does not invalidate the contract any more than such claim would undo a contract formed under other circumstances."); *Felling v. Hobby Lobby, Inc.*, No. 04-2374-GTV, 2005 U.S. Dist. LEXIS 6853, at *13 (D. Kan. Apr. 19, 2005) (noting that "a person who signs a written contract is bound by its terms regardless of his or her failure to read and understand its terms") (internal quotation omitted).

### 2.     **The Corporate Agreement Is Not Ambiguous**

Plaintiffs next argue that the Corporate Agreement is ambiguous because it is unclear who is bound to the arbitration provision.  This argument only applies to plaintiff D-J Engineering. Specifically, plaintiffs argue that the following language in the Corporate Agreement is unclear as to whether the reference to "predispute arbitration" applies only to persons applying for a UBS Visa Signature card or to any person completing an account:

> E.  That if you are applying for a UBS Visa Signature credit card, you agree to be bound by the terms and conditions stated in the Client Relationship Agreement.
>
> **The Client Relationship Agreement contains a predispute arbitration in paragraph U on page 25.**

(Doc. 10-2 at 7 (emphasis in original).)  The court disagrees.

Under New York law, the language of a contract is ambiguous when the language is capable of more than one reasonable interpretation.  *Sorrentino v. Pearlstein*, 55 A.D.3d 901, 902 (N.Y. App. Div. 2008).  But the contract at issue in this case is not ambiguous because the words have a definite and precise meaning.  *See Breed v. Ins. of N. Am.*, 385 N.E.2d 1280, 1282 (N.Y. 1978) (explaining that there is no ambiguity when "the words in the paragraphs of the [contract] under examination have a

definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself"). Specifically, the contract simply states that the Client Relationship Agreement includes a predispute arbitration provision. This language does not restrict or limit the predispute arbitration to only persons applying for a UBS Visa Signature card. *See Loblaw, Inc. v. Employers' Liab. Assurance Corp.*, 442 N.E.2d 438, 441 (N.Y. 1982) (explaining that the plain language of an agreement should not be "subverted by straining to find an ambiguity which otherwise might not be thought to exist"). And a simple review of the Client Relationship Agreement—which plaintiff D-J Engineering received, read, understood, and agreed to be bound by—plainly and unambiguously states that plaintiff D-J Engineering agrees that any controversy between it and UBS will be determined by arbitration. Plaintiffs have not established any ambiguity.

### 3. Whether The Contracts Are Illusory Is An Issue For The Arbitrator

Plaintiffs' last argument is that the contract between each plaintiff and UBS is illusory because UBS had the right to unilaterally change the contract. Plaintiffs' challenge concerns the entire contract and is not limited to the arbitration provision. In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), the Supreme Court held that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* at 449. Accordingly, the issue of whether or not the contracts are illusory is to be resolved in arbitration—not this court. *See Curry v. Volt Info. Sciences, Inc.*, No. 07-7158, 2008 U.S. Dist. LEXIS 20910, at *6–7 (S.D.N.Y. Mar. 18, 2008) (compelling arbitration even though plaintiff argued that the entire contract was illusory).

**IT IS THEREFORE ORDERED** that UBS's motion to compel arbitration and stay case pending arbitration (Doc. 10) is granted.

**IT IS FURTHER ORDERED** that this action is stayed pending arbitration.

**IT IS FURTHER ORDERED** that the parties are to proceed with arbitration in accordance with the provisions of the arbitration clause.

Dated at this 20th day of January, 2012, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
United States District Judge
